IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ORLANDO AMES III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:10-CV-0244 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## TO REVERSE THE DECISION OF THE COMMISSIONER

Plaintiff ORLANDO AMES III brings this cause of action pursuant to 42 U.S.C. §

405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner

of Social Security (Commissioner), finding plaintiff no longer disabled as of August 2, 2007.

Both parties have filed briefs in this cause.  For the reasons hereinafter expressed, the

undersigned United States Magistrate Judge recommends the Commissioner's decision be

REVERSED, and the case REMANDED for further administrative proceedings.

I.
PROCEDURAL HISTORY

Plaintiff injured his back requiring back surgery (a lumbar fusion) in December 1992.

(Tr. 45).  Plaintiff "continued to have significant pain in his back despite the surgery" and

underwent a second back surgery in May 1997 to remove the hardware from his back.  Plaintiff

then developed an infection after the second surgery and had to undergo a third surgery "due to the severity of the infection."  A followup exam showed chronic pain in plaintiff's back despite the surgical procedures.  Plaintiff was unable to walk for more than a short period of time without aggravating his back and exacerbating the pain.  (Tr. 45).  On November 14, 2001, the Social Security Administration found plaintiff had the medically determinable impairment of "failed back surgery" and further found the impairment was medically equal to the criteria of an impairment listed under 1.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 28, 45, 233).  Consequently, the Administration found plaintiff disabled for Disability Insurance Benefits with an onset date of May 31, 2001.

On August 7, 2007, the Administration conducted a Continuing Disability Review to determine whether plaintiff's impairments had medically improved to the degree that his disability had ceased.  (Tr. 26, 45).  The Administration determined:

> You were found disabled because of failed back syndrome.  This review was conducted because it was possible that your health would improve.  You are not engaging in substantial work.  You said you are still disabled because of back pain.  The pain in your back does not severely restrict your ability to carry out your normal daily activities. . . .[1]  Although your condition was severe, records show that your impairment did improve and this improvement increased your ability to work.  Your overall medical condition may cause some restrictions.  However, based on your description of your past job as a prep cook, this condition does not prevent you from performing that work.  Your period of disability ends 8/07 because your health has improved and you're now able to work.

(Tr. 26).  The Administration found that due to medical improvement related to his ability to work, plaintiff's disability ceased as of August 1, 2007 and that his period of disability would

---

[1]The Administration's discussion concerning additional impairments is omitted as plaintiff's challenge to the cessation of benefits concerns only the ALJ's consideration of his back impairment.

terminate at the close of the last day of October 2007.  (Tr. 25, 29-31).[2]

Plaintiff appealed the termination of his disability benefits.  On December 2, 2008, a hearing was held before a state agency Disability Hearing Officer.  (Tr. 43-52).  Plaintiff testified at the hearing concerning, *inter alia*, his surgical history, continued back pain, difficulties walking, sitting and lifting, neuropathy in his legs, and activities of daily living (ADLs).  (Tr. 44).  On January 14, 2009, the Hearing Officer (HO) made a written analysis of the evidence and entered findings of fact.  The HO concluded plaintiff's back impairment was no longer of the severity to meet or equal a Listing and had medically improved since the date of his original disability determination.  (Tr. 47).  The HO noted that at the time of the original disability finding, plaintiff had recently had failed back surgery and due to his inability to walk for more than a short period of time without aggravating his back pain, was found to have an impairment of sufficient severity to meet a medical listing.  The HO noted that as of the time of the hearing, however, plaintiff was able to walk without the need of an assistive device, had good balance, helped with household chores, was able to drive, and took care of his own personal hygiene.  The HO concluded that although plaintiff continues to have back pain at times, it is not of the severity to keep him from walking for more than a short period of time and, thus, is no longer of the severity to meet a medical listing.  The HO thus found there had been "medical improvement" of plaintiff's impairment, that it was related to plaintiff's ability to do work, that

---

[2]Plaintiff was jailed for four (4) days and sentenced to one year on probation after being arrested for assault/family violence and resisting arrest.  (Tr. 301).  On October 23, 2007, plaintiff submitted to a mental health assessment during which he was diagnosed with an intermittent explosive disorder.  (Tr. 301-03).  Plaintiff agreed to seek counseling to help with controlling his anger.  At the assessment, plaintiff reported significant back problems and rated his pain as a constant 8 out of 10.  On January 3, 2008, plaintiff submitted to a psychological evaluation upon referral by the Texas Disability Determination Services.  (Tr. 331-33).  Plaintiff reported his major problem involved his lower back and hips, that he re-injured his back in July 2007, that he suffers from chronic pain, and has difficulty working.  Plaintiff advised he had been marginally self-employed doing yard maintenance for the past two years, working up to twenty hours a week but on an inconsistent basis due to his back pain.

plaintiff could perform light work, and although he could not perform his past relevant work, was able to perform other work.  (Tr. 48-50).  The HO thus concluded plaintiff was no longer disabled.  (Tr. 51).

Plaintiff appealed the HO's termination of his disability benefits.  On September 28, 2009, an administrative hearing was held before an Administrative Law Judge (ALJ).  (Tr. 393-419).  Plaintiff was not represented by counsel at the hearing.  Plaintiff testified at the hearing concerning his surgical history, continued and constant back, hip and lower extremities pain, neuropathy in his legs, his discontinuation of morphine for pain management because of its side effects, and his current additional health issues of heart and kidney problems and diabetes. Plaintiff advised he had not been examined by or spoken to his surgeon since 1997, after the third surgery.  Plaintiff explained his back still bothers him but that he had chosen to just live with the pain rather than risk another surgery.  At the hearing, plaintiff requested he be re-examined concerning the increased pain he was experiencing in his left hip.  (Tr. 368-69). Plaintiff reurged his request for a current physical examination toward the end of his testimony, and the ALJ acknowledged he would "look through" and consider the sufficiency of the records to determine if such an examination was necessary.  (Tr. 395-96).

Plaintiff also testified as to his ADLs, including soliciting jobs, and his employment after October 1, 2007 mowing yards (on a riding mower), weed eating, raking, trimming trees, painting and caring for elderly individuals.  Plaintiff explained his family struggled financially so he had "to do something," but noted that it takes him an extended period of time to complete any job.  Plaintiff testified he is unable to repeatedly climb up and down a ladder to paint and has to alternate with activities on the ground, primarily because of anxiety that he may get dizzy and

fall but also because his "legs start bothering [him]."  Plaintiff advised he has to limit how much

he works each day or he will experience severe pain at night.  Plaintiff explained he may "do

pretty good" one day but then may step wrong, causing a lot of pain and forcing him to have to

sit down.  Plaintiff opined it would be hard for him to maintain employment because of the

uncertainty of whether he would be able to work day-to-day.  (Tr. 375-76).  Plaintiff estimated

he can only sit for about one hour, stand for about half an hour, and walk half a mile total in an

eight-hour day, and could lift or carry ten pounds occasionally.  (Tr. 392-94).  A vocational

expert testified at the hearing.  The ALJ did not order a consultative orthopedic or neurological

examination as to plaintiff's back condition after the hearing.

On December 23, 2009, the ALJ rendered an unfavorable decision, affirming the

cessation of plaintiff's disability benefits and finding plaintiff had, in fact, experienced medical

improvement related to his ability to work as of August 1, 2007.  (Tr. 12-14; 15-21).  In his

decision, the ALJ identified the eight-step evaluation process for determining termination of

disability benefits cases.  At the end of that recitation the ALJ stated:

> Although the claimant generally continues to have the burden of proving
> disability at this [last] step, a limited burden of going forward with the evidence
> shifts to the Social Security Administration.  In order to support a finding that an
> individual is not disabled at this step, the Social Security Administration is
> responsible for providing evidence that demonstrates that other work exists in
> significant numbers in the national economy that the claimant can do, given the
> residual functional capacity, age, education, and work experience.

The ALJ noted the most recent favorable medical decision finding plaintiff disabled was

November 14, 2001, at which time plaintiff had the medically determinable impairment of

"failed back surgery."  (Tr. 17).  The ALJ then noted plaintiff owns and operates a landscaping,

painting and mowing business, but the ALJ further found that since plaintiff keeps no books or

records and does not report earnings to the Internal Revenue Service, it was "impossible to determine whether the [plaintiff's] ongoing work activity is substantial gainful work activity." "After careful consideration of the entire record," the ALJ found that as of August 1, 2007 plaintiff had the medically determinable impairments of major depressive disorder, a generalized anxiety disorder, an antisocial personality disorder, diabetes mellitus, heart disease and peripheral vascular disease, but that such impairments did not met or medically equal the severity of a listed impairment.  The ALJ did not find plaintiff had any degree of back impairment whatsoever.

The ALJ found the medical evidence supported a finding that as of August 1, 2007, there had been a decrease in medical severity of the impairment found disabling on November 14, 2001.  The ALJ noted plaintiff had not sought significant treatment for a "chronic back condition" since August 1, 2007, and that on the one occasion when he complained of back related symptoms, it was an "acute condition" precipitated by pulling, that he was treated conservatively, and back pain was not mentioned at the followup examination.

The ALJ found plaintiff's "medical improvement" was related to his ability to work because, as of August 1, 2007, plaintiff's "failed back surgery" impairment no longer met or medically equaled the same listing that was met at the time of the previous disability determination.  The ALJ did not provide any details in support of such a finding.  The ALJ noted there was no evidence of ongoing treatment for any back condition and that although plaintiff did complain of back pain during his consultative mental status examination, he also indicated such pain did not preclude him from engaging in an occupation consisting primarily of physical labor.  (Tr. 18).

The ALJ found certain of plaintiff's impairments were severe because they caused more than minimal limitation in his ability to perform basic work activities.  Based on these impairments the ALJ found, as of August 1, 2007, plaintiff had the residual functional capacity (RFC) to perform light work, limited by non-exertional limitations of only simple instructions and simple decisions.  The ALJ noted plaintiff testified he remains disabled due to, *inter alia,* back problems, hip pain, lower back pain, balance problems, neuropathy in feet, and left leg numbness, that he had described his history of back surgery, and that he indicated he no longer takes prescription pain medication for his back.  The ALJ, "[a]fter considering the evidence of record," found plaintiff's statements concerning the limiting effects of the symptoms produced by his medically determinable impairments were not credible to the extent they were inconsistent with the RFC assessment.  (Tr. 19).  In making this credibility determination the ALJ cited plaintiff's criminal history, extensive daily activities, and operation of a 20-hour per week landscaping, painting and mowing business.  The ALJ also noted physical examinations conducted since August 1, 2007 had been "wholly negative with the exception of one instance of trace lower extremity edema and one instance of acute pain with palpation of the lumbosacral muscular following a pulling-related injury."  (Tr. 20).

The ALJ concluded plaintiff was unable to perform his past relevant work as of August 1, 2007, and that by using the Medical-Vocational Rules as a framework found, plaintiff not disabled.  The ALJ also concluded that as of August 1, 2007, plaintiff was able to perform a significant number of light, unskilled jobs in the national economy based on VE testimony.  (Tr. 21).  The ALJ concluded plaintiff's disability ended as of August 1, 2007.

On August 9, 2010, the Appeals Council denied plaintiff's request for review of the

decision of the ALJ, rendering the ALJ's decision the final decision of the defendant

Commissioner.  (Tr. 4-6).  Plaintiff now seeks judicial review.


## II.
## STATEMENT OF FACTS

On pages 2 through 6 of his brief, plaintiff has accurately set forth, in a statement of

facts, the evidence of record relating to (1) plaintiff's age, education and work experience; (2)

relevant medical evidence up to the date of the original disability finding; and (3) relevant

medical evidence subsequent to the date of the original disability finding.  Due to the

thoroughness of plaintiff's recitation of the relevant medical evidence, the undersigned hereby

references those portions of the statement of facts set forth in plaintiff's brief but does not restate

them here.


## III.
## STANDARD OF REVIEW

Both plaintiff and defendant have set forth the appropriate standards governing this

Court's review of disability determinations by the Commissioner.


## IV.
## ISSUES

In challenging the Commissioner's termination of plaintiff's disability benefits, plaintiff

presents the following arguments:

1.      The ALJ failed to fully and fairly develop the record by ordering a
        consultative physical examination concerning plaintiff's original
        impairment, *i.e.*, "failed back surgery," which had been found to be
        disabling due to a severity which was medically equivalent to a listing;

2.      The ALJ committed reversible legal error by improperly placing the

burden of proof on plaintiff to show continuing disability rather than
placing the burden of proof on the Administration to show plaintiff was no
longer disabled under the medical improvement standard; and/or

3. The Commissioner's finding of medical improvement is not supported by
substantial evidence.

V.

MERITS

A.

*Burden of Proof*

Once an individual qualifies for disability benefits and has been receiving those benefits

for a period of time, the Social Security Administration is required to review his case

periodically to determine whether the previously found status of disability continues or has

ended.  20 C.F.R. § 404.1594(a).  If the benefit recipient's condition has improved, his eligibility

to receive disability benefits may terminate.  *See Jones v. Shalala,* 10 F.3d 522, 524 (7th Cir.

1993) (*citing* 42 U.S.C. § 423(f)).

Regulations provide for an eight-step sequential evaluation to be used in making this

termination determination.  20 CFR  § 404.1594(f).  A prior disability will be found to have

ended if substantial evidence demonstrates, *inter alia*:

1. There has been any medical improvement in the individual's impairment
or combination of impairments;

2. This medical improvement is related to the individual's ability to
do work;[3] and

---

[3]Where the original finding of disability was based on a finding that a Listing was met or medically equaled, if on review it is
found that (a) medical improvement has occurred, *and* (b) that the originally applicable Listing is no longer met or equaled, then
the medical improvement found is presumed to be "related to ability to work."  20 CFR § 404.1594(c)(3)(i).

3.      The individual is now able to engage in substantial gainful activity.[4]

*See also* 42 U.S.C. § 423.  Thereafter, the severity of a claimant's continuing and current impairments is evaluated by assessing his ability to function and do basic work activities, assessing a claimant's residual functional capacity and considering whether the claimant can perform past relevant work and if he cannot, then, at the final step, considering whether there is other work the claimant can perform.

In a disability benefits termination proceeding, the Commissioner bears the burden of proof at all stages and "must, in all relevant respects, prove that the person is no longer disabled." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (*citing Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991).  *See also Wilson v. Barnhart*, 129 Fed.Appx. 912, 914 (5th Cir. May 10, 2005); *Berry v. Astrue*, 2010 WL 786608 at *13 (S.D. Tex. March 8, 2010); *Murphy v. Barnhart,* 2002 WL 484682, *3 (N.D.Tex. March 27, 2002).  The ultimate burden of proof always lies with the Commissioner in termination proceedings.  *Griego*, 940 F.2d at 944.

In his second ground, plaintiff argues the ALJ committed reversible legal error by improperly placing the burden of proof on plaintiff at all stages of the disability review sequence except for the final stage.  Plaintiff contends the ALJ improperly shifted the burden of proof to plaintiff to show continuing disability instead of placing the burden on defendant to show medical improvement related to ability to work.  Plaintiff concludes the ALJ's decision is, therefore, fundamentally flawed.

In his decision, in setting forth the eight-step evaluation process for determining

---

[4]There must be substantial evidence to establish the claimant "can currently engage in gainful activity before finding that [claimant's] disability has ended."  20 CFR Sec. 404.1594(c)(3)(i)(2011).

termination of disability benefits cases, the ALJ specifically stated:

> <u>Although the claimant generally continues to have the burden of proving disability</u> (emphasis supplied) at this [last] step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience.

The above-quoted language from the ALJ's decision, as argued by plaintiff, does reflect an impermissible shifting of the burden to require plaintiff to present substantial evidence of disability at all but the last step of the eight-step sequential evaluation.  Not only does the reading of this portion of the ALJ's administrative decision reflect an improper shifting of the burden of proof, but the fact that the ALJ found fault with the failure of plaintiff to produce evidence of continuing treatment shows the burden was on plaintiff to show his disability had not terminated.  Stated differently, the burden was on plaintiff to show <u>he had not</u> medically improved rather than on the defendant to show <u>plaintiff had</u> medically improved.  In addition, there was no analysis of the factors <u>which were present in 2001</u> when plaintiff was found disabled and which of those factors were no longer present in 2007.  Instead, the focus of the administrative decision was on plaintiff's failure to seek medical care, and on plaintiff's physical activities after August 2007.

In a case involving an application for benefits as opposed to a termination of benefits, the failure of the claimant to seek medical treatment for a condition claimed to be disabling is relevant and may be considered.  While it is possible that the failure of an individual to seek medical treatment for a disabling condition could also be relevant in a termination case, there has been no showing that in the case before the Court involving plaintiff Ames that such is relevant,

much less determinative.

First, there is no medical evidence indicating any additional medical treatment would benefit the plaintiff.  Plaintiff's disabling impairment was identified as "failed back syndrome." The period of disability was open-ended.  There is no evidence in the record that the "failed back surgery" condition would resolve over time without medical intervention, nor is there any evidence additional medical treatment would cure the condition.  This is not to say that such medical evidence may not exist, but such simply is not in the administrative record. Consequently, the ALJ's predicating continuation of disability benefits on plaintiff having to produce evidence showing he continued to be treated was a shifting of the burden of proof.  Not only did it constitute a shifting of the burden of proof, but without any medical evidence that additional treatment was medically warranted or medically necessary, the relevance of plaintiff's failure to seek additional medical treatment is marginal.

Lastly, the emphasis on plaintiff's physical activities, standing alone, does not constitute sufficient substantial evidence to support the ALJ decision.  First, plaintiff's physical activities, while relevant, are not the type of medical evidence the regulations appear to require in a termination of benefits case.  Even if plaintiff's physical activities, without additional medical evidence would be sufficient, the physical activities in this case are open to subjective interpretation.  While it is clear plaintiff began, sometime in 2006, doing odd jobs involving lawn maintenance and house painting, it is unclear from plaintiff's testimony at the ALJ hearing how much of that work was done by plaintiff versus plaintiff's son, and it is also unclear how much of an accommodation was required for what plaintiff described as his continuing problems with back and hip pain.  It is also significant that such activity did not constitute substantial

gainful activity.  The fact that plaintiff did not have adequate books and records to allow the ALJ

to make a determination that he engaged in substantial gainful activity does not warrant a finding

that his activities were substantial.  Further, even if it is argued plaintiff's activities alone would

warrant a determination that the prior disabling impairment had medically improved, then those

activities would warrant such a finding <u>only if the ALJ conducted a comparison between</u>

<u>plaintiff's activities in 2006 and 2007 with his activities in 2001</u>.  Plaintiff was not questioned by

the ALJ as to the difference, if any, between his activities in 2001 and 2007, nor was any

evidence adduced whether or not plaintiff was totally incapacitated in 2001.

This burden shifting was improper and contrary to the statute and case law and

constituted legal error.  The Court cannot find misapplication of the burden of proof harmless.

Plaintiff's second ground should be GRANTED.


B.
*Failure to Fully Develop the Record*

Plaintiff was found disabled in 1997 based on a finding that his "failed back surgery"

was, or had resulted in, a condition which medically equaled the severity of a per se disabling

impairment under former Listing 1.05C concerning "other vertebrogenic disorders" of the spine

(now subsumed under section 1.04 of the Listings).  (Tr. 26-28, 233).  Plaintiff was re-evaluated

as part of the ongoing review of his disability status to determine continued eligibility.  The ALJ,

presented with a plaintiff who had a previously determined per se disability, was required to

evaluate whether this impairment had ceased, no longer existed or was no longer disabling

before the defendant could terminate previously awarded disability benefits.  The defendant

could terminate plaintiff's disability benefits if the Commissioner showed substantial evidence of:

1.      Any medical improvement in plaintiff's impairment or combination of impairments;

2.      Medical improvement that is related to plaintiff's ability to do work; <u>and</u>

3.      Plaintiff's ability to now engage in substantial gainful activity.

*See* 42 U.S.C. § 423(f)(1).  "Medical improvement" is the essential precondition for a finding that disability has ceased.  Medical improvement is shown by "any decrease in the medical severity" of a claimant's impairment(s) which were present "at the time of the most recent favorable medical decision" finding the claimant "disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1).  A decrease in medical severity "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)."  *Id.*  As shown by the examples set forth under the section addressing medical improvement, the regulations presume changes in symptoms, signs and/or lab findings will be demonstrated by current medical evidence showing a decrease in severity, or documented by the current symptoms and signs as reported by a physician.  As discussed above, the administrative record here does not contain any current (2007) medical evidence regarding plaintiff's previously-determined per se disabling back impairment of "failed back surgery."

        Medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity of the impairment(s)" present at the time of the most recent favorable medical decision <u>and</u> "an increase in [the claimant's] functional capacity to do basic work activities."  20 C.F.R. § 404.1594(b)(2),(3).  If medical improvement is shown to the extent that a listed impairment originally found no longer meets the same listed impairment and, in fact, is

no longer a severe impairment, then the medical improvement is related to a claimant's ability to work.  *Id.*  When "new evidence" showing a change in signs, symptoms and laboratory findings establishes that medical improvement has occurred and a new assessment of the individual's functional capacity demonstrates, on the basis of evaluations, the individual's ability to perform basic work activities has increased, medical improvement related to ability to do work has been established.

The ALJ was required to first focus on whether there had been medical improvement of plaintiff's impairment of "failed back surgery."  The medical evidence reflects the last followup examination by plaintiff's treating rehabilitation physician was August 28, 2001 (Tr. 201) and the last consultative exam October 25, 2001 (Tr. 228-31), both prior to the November 14, 2001 disability determination.  While there are numerous records showing medical treatment in 2007, almost all of the medical evidence from treating/examining sources concerned conditions other than plaintiff's back.  There was evidence relating to plaintiff's cardiovascular condition and, to a lesser degree, his diabetes, kidney impairment, depression, and a bout of pneumonia.  (Tr. 235-90, 304-30, Supp. Tr. 361-79).  One medical record did address a complaint of "muscular lower back pain," but it was included in the records mentioned above relating to the other conditions and noted the pain was the result of a recent acute injury and was treated with muscle relaxers and pain relievers.  (Supp. Tr. 370).  Those 2007 records did not, however, address the spinal deficiencies which necessitated the surgeries in 1992 and 1997, nor did they contain any current medical evaluation of these spinal deficiencies.  In fact, the medical evidence of record covers only the rehabilitative and pain management reports concerning plaintiff's back impairment entered prior to the disability determination in 2001, and the other (non-back) impairments that later developed in 2007 and 2008.  Consequently, except for plaintiff's

statements of his daily activities, the ALJ had only the limited medical evidence set out above to fulfill his burden of proving plaintiff was no longer disabled by the back condition originally found disabling.

At the de novo hearing before the ALJ, plaintiff twice requested a consultative "re-examination" of his musculoskeletal condition, citing hip difficulties and his inability to secure an examination through workers' compensation.  (Tr. 368-69, 395).  Despite plaintiff's requests for a consultative examination, the ALJ did not order such an examination.  The ALJ's decision does not acknowledge plaintiff's request for an examination, nor does it offer an explanation for declining plaintiff's request.  (Tr. 15- 21).

By his first ground, plaintiff contends the ALJ failed to fulfill his duty to fully and fairly develop the record by failing to order a consultative examination of petitioner's back deficiencies, the impairment originally found disabling.

An ALJ has a duty to fully and fairly develop the facts and evidence of record relating to an applicant's claim for disability benefits to ensure his decision is an informed decision and is based on sufficient facts.  *Pierre v. Sullivan,* 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir. 1984).  Where a claimant is not represented by counsel (as here), the ALJ has a "special duty" to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *See Kane,* 731 F.2d at 1219-20.  This duty to develop the record includes ordering a consultative examination when necessary for the ALJ to make an informed decision.  *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996).

The ALJ's duty to develop the record is especially pronounced in a termination of benefits proceeding where the ultimate burden of proof lies with the defendant.  *See Griego,* 940 F.2d at 944.  If the ALJ does not satisfy this burden, his decision is not substantially justified.

*Kane*, 731 F.2d at 1219.  Reversal of the ALJ decision on this basis, however, is appropriate only if the applicant shows he was prejudiced.  *Id.* at 1220.

The medical evidence contained in the record after plaintiff's original disability finding in 2001 does not include any meaningful and/or comprehensive evaluation of plaintiff's back impairment, extremities, or general musculoskeletal condition, nor does it include a medical opinion from any treating or examining source as to the effect(s) of that condition on plaintiff's physical abilities – *i.e.*, what plaintiff can still do despite the effect(s) of his back impairment(s) at any time after the original finding of disability.  In fact, there is no medical evidence after the disability finding whatsoever from treating/examining sources related to the back impairment of "failed back surgery."

It is difficult to see how "medical improvement" of an impairment can be evaluated, much less how any such improvement's relation to the claimant's ability to work can be determined, if there is no objective medical evidence nor any medical assessment showing the listed impairment to no longer meet or equal the listing based on actual changes shown by the medical evidence.  Consequently, while the non-medical evidence in the form of plaintiff's testimony might indicate an increase in his functional capacity and possibly his ability to work, the lack of any medical evidence whatsoever concerning his impairment previously held to be disabling would appear to preclude a finding of medical improvement sufficient to terminate benefits.  Consequently, while it is possible that plaintiff's impairment may have decreased in medical severity, such decrease is *not* documented by any medical findings.

Plaintiff contends this failure on the ALJ's part to secure medical evidence in the form of a consultative examination as to plaintiff's failed back surgery and/or continuing back

impairment was not only error, but was also prejudicial to plaintiff.  Plaintiff argues that had the

ALJ ordered a consultative examination related to the "failed back surgery" impairment

originally found to be disabling, evidence could have been adduced which might have changed

the ultimate outcome by showing there was no "decrease in the medical severity" of plaintiff's

impairment.

Plaintiff has not shown what evidence plaintiff would have obtained from a consultative

exam or how that evidence would have changed the result, and defendant contends plaintiff has

not shown prejudice.  Of course, the only way plaintiff can show prejudice in that manner is by

having the exam.  More importantly, plaintiff can be considered as having not shown prejudice

only if the defendant's medical improvement finding is valid.  If defendant's medical

improvement finding is not valid, particularly if it is not valid due to the absence of true medical

evidence of improvement, then the consultative examination would assist defendant as much if

not more than plaintiff.  That is, the consultative exam could provide defendant with the

"medical evidence" needed to support medical improvement.  On remand, the ALJ should take

steps to ensure a complete record, including medical evidence regarding improvement or lack

thereof, is available to support his decision.  Additional medical evidence concerning plaintiff's

back impairment is needed for the ALJ to make an informed decision as to whether medical

improvement of plaintiff's impairment did, in fact, occur.  In obtaining the needed medical

evidence, the ALJ is not restricted from inquiring as to the remedial effects of the prior surgeries,

the continued existence of a back impairment, the severity of such impairment, or a medical

opinion describing the types of work plaintiff should be capable of performing.[5]  Based on the

---

[5]"Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of a medical source statement will not make the report incomplete." *Id.*

administrative record before the Court and its lack of meaningful "medical evidence" of plaintiff's back condition, a consultative exam is warranted.

C.

_Evidence to Show Medical Improvement_

Medical improvement "is determined _by a comparison of prior and current medical evidence_ which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1) (emphasis added). Under his third ground, plaintiff submits the ALJ erred in finding the Commissioner meet his burden of proof to show "medical improvement" because the ALJ failed to compare the prior medical evidence with current medical evidence as required by section 404.1594(c)(1).

Again, the only prior medical evidence of record concerning plaintiff's back condition are the 2001 reports of plaintiff's pain management/rehabilitation physicians and the consultative examination. Subsequent thereto plaintiff was found disabled by "failed back surgery," an impairment determined to medically equal a listing.[6] There is <u>no</u> current medical evidence concerning plaintiff's back ailment. Consequently, the ALJ, instead of comparing "prior and current medical evidence," based his determination that medical improvement occurred upon the following:

1. Plaintiff's failure to seek "significant treatment for a chronic back condition" since August 1, 2007;

---

[6]Presumably this disability determination was supported by medical evidence in addition to the 2001 rehabilitation/pain management records included here. "Once evidence has been presented which supports a finding that a given condition exists it is presumed in the absence of proof to the contrary that the condition has remained unchanged." _Loza v. Apfel_, 219 F.3d 378, 395-96 (5th Cir. 2000).

2.      Plaintiff's only complaint of "back related symptoms" made to a physician being the result of an acute injury brought on by "pulling," conservative treatment of the injury, and resolution of the injury prior to the followup visit; and

3.      Plaintiff's physical activities after August 1, 2007.

The ALJ did not reference the prior medical evidence, limited as it was, in his statements supporting his finding of medical improvement.  Critically, the ALJ did not – and could not based on the absence of current medical evidence in the record – compare the prior medical evidence to current medical evidence regarding plaintiff's back deficiencies.  The regulation requiring comparison of prior and current medical evidence does not provide an exception where there is a lack of current medical evidence.

The Court notes the ALJ may have been presented with an uncommon disability of "failed back surgery" rather than a specific, identifiable back impairment.[7]  The severity of the "failed back surgery" impairment was found to medically equal the criteria of a listed impairment.  Substantial evidence to support a finding of medical improvement would seem to require at least a brief discussion of the specifics of plaintiff's original impairment and current evidence of the medical severity of that impairment.  The record as it exists provides neither.

As noted above, the ALJ should have obtained current medical evidence either through a consultative exam or otherwise concerning plaintiff's back condition to determine if medical improvement occurred, and then compared the current medical evidence to the prior medical evidence – at least to the extent necessary to show medical improvement.

_____

[7]"Failed back surgery syndrome (also called FBSS, or failed back syndrome) is a misnomer, as it is not actually a syndrome – it is a very generalized term that is often used to describe the condition of patients who have not had a successful result with back surgery or spine surgery and have experienced continued pain after surgery. There is no equivalent term for failed back surgery syndrome in any other type of surgery (e.g. there is no failed cardiac surgery syndrome, failed knee surgery syndrome, etc.). *Failed Back Surgery Syndrome (FBSS): What It Is and How to Avoid Pain After Surgery,* www.spine-health.com (January 28, 2003, updated November 4, 2009).

## VI.
## CONCLUSION

The ALJ's purported placement of the burden of proof on plaintiff was reversible error. Further, the ALJ should have obtained current medical evidence concerning plaintiff's back deficiencies in the form of a consultative examination or other means.  The ALJ's findings have sufficient evidentiary support except for his finding of medical improvement of plaintiff's original impairment.  The determination of not disabled should be reversed and the case remanded for further evaluation consistent with this report, to wit:  the ALJ shall clarify the burden of proof placed upon each party, shall obtain current medical evidence as to the medical severity of plaintiff's original impairment, and shall include a comparison of prior and current medical evidence showing any changes associated with plaintiff's back impairment.

## VII.
## RECOMMENDATION

It is the opinion and recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff's disability insurance benefits should be terminated be REVERSED and the case REMANDED for further administrative proceedings consistent with this Report and Recommendation.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of March, 2012.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).